**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JUAN REYES,

        Plaintiff,

v.                                                    Case No: 6:20-cv-278-WWB-EJK

FEDERAL EXPRESS CORPORATION,

        Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 29), Plaintiff's Response (Doc. 32), and Defendant's Reply (Doc. 34). For the reasons set forth herein, Defendant's Motion will be granted.

**I.  BACKGROUND**

Plaintiff, Juan Reyes, worked for Defendant, Federal Express Corporation ("**FedEx**"), from November 1993 until he was terminated in February 2016. (Doc. 30-1 at 5, 18–19, 33). Toward the end of his employment, Plaintiff was employed as a Ramp Transport Driver ("**RTD**") at Defendant's airport ramp location in Orlando, Florida. (*Id.* at 11, 34). An RTD operates a tractor-trailer to pick up and deliver freight between the Orlando ramp and local FedEx stations. (Doc. 30-2 at 2). During Plaintiff's employment as an RTD, approximately sixty percent of the workforce at the Orlando airport ramp was Hispanic, thirty percent Caucasian, and ten percent African American. (Doc. 30-2 at 2).

Plaintiff normally worked from 3:30 a.m. until noon. (Doc. 30-2 at 2). Plaintiff was required to complete a timecard each day to allow Defendant to accurately calculate Plaintiff's compensation. (Doc. 30-1 at 34–35, 39). The timecard warns that falsification

of a timecard is grounds for termination. (*Id.* at 39–42, 100). In addition to the timecard, The People Manual warns that falsification of a timecard is a terminable offense. (*Id.* at 87, 167–69). FedEx also has policies that prohibit unauthorized persons in FedEx vehicles. (Doc. 30-2 at 3).

On December 28, 2015, Plaintiff complained to Keith Burns, his immediate supervisor, that JoAnn McCoy, a fellow RTD in Plaintiff's workgroup, took pictures of him with her cell phone while he was assisting a fellow employee, Irelis Santiago. (Doc. 30-1 at 11, 21, 23–26; Doc. 30-2 at 2). On January 11, 2016, Plaintiff wrote a statement memorializing his complaint. (Doc. 32-5 at 1). Therein, Plaintiff indicated that he felt his privacy was violated and he did not feel comfortable working with McCoy. (*Id.*). Although Plaintiff indicated he had prior issues with McCoy, he did not provide specifics or include any allegations of discriminatory comments. (*Id.*). In fact, Reyes stated that when he asked McCoy why she was taking pictures she responded that "she only speaks in front of managers." (*Id.*).

Shortly thereafter, on January 14, 2016, Burns was informed that Reyes and Santiago were riding in a FedEx truck together without authorization. (Doc. 30-2 at 3). Burns conducted an extensive investigation that included an interview of the witness, three separate interviews of Plaintiff and Santiago, a review of Plaintiff's timecard and written statements, a review of security video footage, Plaintiff's scan-count report, Google maps, and the proof of delivery for Plaintiff's last delivery. (*Id.* at 3–4). Burns concluded that Plaintiff falsified information on his timecard and rode unauthorized in a company vehicle with Santiago. (*Id.* at 4–6). Consequently, both Plaintiff and Santiago were terminated. (Doc. 30-1 at 17–18, 71; Doc. 30-2 at 2; Doc. 32-2 at 1). Plaintiff

appealed his termination through the Guaranteed Fair Treatment Procedure and his termination was upheld. (Doc. 30-1 at 77, 147, 159, 161, 163).

On February 15, 2016, during the first phase of the appeal process, Plaintiff filed a discrimination complaint. (Doc. 30-3 at 17–23; Doc. 32-3 at 5). Days later Defendant opened an internal investigation into Plaintiff's allegations. (Doc. 32-3 at 2). In his discrimination complaint, Plaintiff identified the earliest date of discrimination as "12/28-16." (Doc. 30-3 at 18). Plaintiff indicated in his complaint that he informed his manager of an "associate employee['s]" disrespectful treatment of Plaintiff and other Hispanics, which included "racial slurs, verbal abuse, insult[s], looks of hate, [and] the inappropriate use of [her] phone on FedEx property." (*Id.* at 21–22). Specifically, at the end of 2015, McCoy directed the following racial slurs toward Plaintiff: "spics," "you guys [are] just always eating your Spanish rice," "boyo," and "Spanish faggot." (Doc. 30-1 at 15–16). McCoy was not Plaintiff's superior and had no role in Defendant's decision to terminate Plaintiff's employment. (*Id.* at 10–11, 14–15). Plaintiff's superiors who made the decision to terminate his employment never made any racial slurs, offensive comments, or racially discriminatory or harassing comments to Plaintiff or in his presence. (*Id.* at 9–10). Plaintiff's complaint was investigated and found to be unsubstantiated. (Doc. 30-3 at 3–4, 25–26).

There is a question as to whether Plaintiff verbally notified Burns of the racial slurs before he was terminated. When asked about his prior complaints, Plaintiff testified with respect to his January 11, 2016 written statement that his reference to "previous[ ] issues" with McCoy was regarding her discriminatory comments because "we already talked to

Burns about it." (Doc. 30-1 at 29). Burns, on the other hand, states he did not learn of McCoy's alleged racial slurs until February 24, 2021. (Doc. 30-2 at 3).

Plaintiff asserts that several individuals were issued warnings for falsifying their timesheets as opposed to being terminated. (Doc. 32-6 at 1–21). Defendant has presented evidence that six other employees, in addition to Plaintiff and Santiago, were terminated for falsifying their timecards in the South Coast District where Plaintiff was employed, including two African American employees and one Caucasian employee. (Doc. 30-3 at 5, 56–67).

Based on the foregoing, Plaintiff alleges that he was discriminated against in violation of the Florida Civil Rights Act ("**FCRA**"), Fla. Stat. §§ 760.01–760.11, on the basis of his race because other non-Hispanic employees who knowingly and intentionally falsified their timecards were not terminated. (Doc. 1-1 at 7). He further argues that he was terminated in retaliation for filing an internal discrimination complaint. (*Id.* at 7–8).

## II.  LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by

showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III. DISCUSSION

Defendant argues that Plaintiff has failed to establish a prima face claim of retaliation or discrimination. Alternatively, even had Plaintiff done so, Defendant contends that Plaintiff has failed to rebut Defendant's legitimate, non-retaliatory or nondiscriminatory business reasons for terminating Plaintiff's employment.

The FCRA prohibits employment discrimination and retaliation against an employee who complains about such discrimination. Turning first to Plaintiff's retaliation claim, "[b]ecause [the retaliation] provision of the FCRA is almost identical to its federal counterpart, 42 U.S.C. § 2000e-3(a), Florida courts follow federal case law when examining FCRA retaliation claims." *Carter v. Health Mgmt. Assocs.*, 989 So. 2d 1258, 1262 (Fla. 2d DCA 2008). Likewise, with respect to Plaintiff's discrimination claim, "[t]he FCRA is patterned after Title VII, and thus federal case law dealing with Title VII is

5

applicable to employment discrimination claims brought under Florida law." *Dar Dar v. Associated Outdoor Club, Inc.*, 248 F. App'x 82, 84 n.1 (11th Cir. 2007) (citation omitted).

In this case there is no direct evidence that Plaintiff was fired in retaliation for his protected activity. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ("Evidence that only suggests discrimination, or that is subject to more than one interpretation does not constitute direct evidence." (internal citations omitted)). Therefore, the Court utilizes the *McDonnell Douglas*[1] burden-shifting framework to address the circumstantial evidence before it. *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017). Under that standard, the plaintiff has the initial burden to establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. "If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis v. City of Union City*, 918 F.3d 1213, 1221 (11th Cir. 2019). "Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.* The plaintiff is required to rebut each legitimate, non-retaliatory or nondiscriminatory reason given by the defendant. *Crawford v. City of Fairburn*, 482 F.3d 1305, 1309 (11th Cir. 2007).

To present a prima facie case of retaliation, Plaintiff must demonstrate that: 1) he engaged in statutorily protected activity; 2) he suffered an adverse employment action; and 3) there is a causal link between the protected activity and the adverse action. *Ray v. City of Tallahassee*, 664 F. App'x 816, 818 (11th Cir. 2016). To establish a prima facie

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

6

case of discrimination on account of race, the employee must show he: "(1) is a member of a protected racial class; (2) was qualified for the position; (3) experienced an adverse employment action; and (4) was replaced by someone outside of [his] protected class or received less favorable treatment than an individual outside of [his] protected class." *Matthews v. City of Mobile*, 702 F. App'x 960, 965 (11th Cir. 2017) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)).

Here, even if Plaintiff successfully alleged a prima facie case for both claims, summary judgment is proper because Plaintiff has failed to rebut each legitimate, non-retaliatory or nondiscriminatory reason offered by Defendant for his termination. Specifically, Defendant's proffered reasons for terminating Plaintiff were his falsification of his timecard, falsification of statements during the investigation, and riding while unauthorized in a company vehicle with another employee, a violation Plaintiff eventually admitted. Plaintiff does not dispute that falsification of a timecard is a terminable offense but offers evidence to establish that such reason was pretextual. Plaintiff, however, completely fails to address the additional two reasons given for his termination. *City of Fairburn*, 482 F.3d at 1309 ("By failing to rebut each of the legitimate, nondiscriminatory reasons of the [defendant], [the plaintiff] has failed to raise a genuine issue of material fact about whether those reasons were pretext for discrimination."); *see also Daniel v. Dekalb Cnty. Sch. Dist.*, 600 F. App'x 632, 638 (11th Cir. 2014) ("Because [the plaintiff] has failed to rebut each of the [defendant's] proffered legitimate reasons, she cannot withstand summary judgment."). Thus, Plaintiff has failed to carry his burden under the *McDonnell Douglas* test.

Finally, to the extent that Plaintiff argues that he has instead presented circumstantial evidence that raises a reasonable inference that Defendant discriminated[2] against him, his argument is without merit. "A plaintiff can still proceed past summary judgment if he 'presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker.'" *Cooler v. Layne Christensen Co.*, 710 F. App'x 842, 846 (11th Cir. 2017) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Holley v. Ga. Dep't of Corr.*, 845 F. App'x 886, 890–91 (11th Cir. 2021) (citing *Lewis*, 934 F.3d at 1185).

The undisputed evidence establishes that Plaintiff complained to Burns that McCoy took his picture while he was helping his co-worker. In turn, Defendant conducted an investigation of Plaintiff's complaint as well as other alleged wrongdoing by Plaintiff. During the investigation it came to light that Plaintiff falsified his timecard, lied during the investigation concerning his timecard, and he was admittedly riding with his co-worker in a company vehicle without authorization. Plaintiff has presented no evidence that any other employee committed all three violations and kept his or her job. Additionally,

---

[2] It is not clear if the convincing-mosaic theory applies to retaliation claims, *see Change v. Midtown Neurology, P.C.*, No. 1:19-cv-00885, 2021 WL 2483368, at *25 (N.D. Ga. Feb. 3, 2021) (noting that "[t]he Eleventh Circuit has yet to decide in a published decision whether retaliation claims can survive summary judgment under a convincing-mosaic theory" and collecting cases), but even assuming it does, Plaintiff has failed to raise such an argument with respect to his retaliation claim. Therefore, the Court only considers his discrimination claim under this theory.

Plaintiff has not presented any evidence of pretext outside of that already considered, evidence of systemically better treatment for employees outside his class, suspicious timing, ambiguous statements, or any other evidence from which a reasonable jury could infer intentional discrimination. *Cf. Smith*, 644 F.3d at 1345–46 (finding that the plaintiff presented the convincing mosaic of circumstantial evidence through evidence that his supervisor fired him and other white employees who distributed racist emails, but did not terminate black employees for the same or similar conduct, and where the defendant relied on a "matrix" that indicated that race was pertinent to the discipline decisions made). Therefore, Plaintiff has also failed to show a convincing mosaic of circumstantial evidence sufficient to survive summary judgment.

IV. **CONCLUSION**

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that the Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff, providing that Plaintiff shall take nothing on his claim against Defendant. Thereafter, the Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on July 9, 2021.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record